UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONNIE JONES, | : | |
| Plaintiff, | : | NO. 3:06CV537 (MRK) |
| v. | : | |
| JOHN E. POTTER, POSTMASTER GENERAL, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| SANDRA E. MARTINEZ, | : | NO. 3:06CV611 (MRK) |
| Plaintiff, | : | |
| v. | : | |
| JOHN E. POTTER, POSTMASTER GENERAL, | : | |
| Defendant. | : | |

## **MEMORANDUM OF DECISION**

Pending before the Court are motions for summary judgment filed by Mr. Jones [doc. # J29],[1] Ms. Martinez [doc. # M29], and Defendants [hereinafter "USPS"] [docs. ## J27, M27] in the above-captioned cases. Although Mr. Jones and Ms. Martinez filed their suits separately, both claim that USPS discriminated against them when they were not selected for the same job vacancy at the Stamford postal facility at which they both worked. Therefore, the Court will address the claims of both Plaintiffs in this Memorandum. For the reasons detailed below, the Court GRANTS IN PART

---

[1] For the sake of clarity, citations to documents from Mr. Jones's case, 06cv537, will be preceded by a "J," and citations to documents from Ms. Martinez's case, 06cv611, will be preceded by an "M."

and DENIES IN PART USPS's Motions for Summary Judgment [docs. ## J27, M27] and DENIES Mr. Jones's [doc. # J29] and Ms. Martinez's [doc. # M29] Motions for Summary Judgment.

## I.

The following forms the factual background to Mr. Jones's and Ms. Martinez's Complaints [docs. ## J1, M1]. As is required on a motion for summary judgment, the Court relates the facts in the light most favorable to Plaintiffs.

Mr. Jones, a black male, and Ms. Martinez, a Hispanic female, are both longtime employees of USPS. Mr. Jones began working for USPS in 1989, first as a custodian and later as a Maintenance Mechanic specializing in the automated mail handling system. Ms. Martinez has worked for USPS since 1985 in a variety of capacities. At the time of the events underlying her suit, she worked as a Maintenance Support Clerk/Procurement. Both were qualified applicants for the position of Supervisor of Maintenance Operations ("SMO"), the promotion at the heart of these cases.

USPS posted a notice of a job vacancy for an SMO position on January 31, 2005 ("first posted position"), with a filing deadline for applications of February 14, 2005. Mr. Jones and Ms. Martinez applied for the position, but another applicant, Mr. Gerald Barletta, was selected. A second SMO position was posted as a vacancy on April 7, 2005 ("second posted position"), and it is this posting that is at issue here. Again, both plaintiffs applied for the position, but Mr. Angelo Agostini, a white male, was selected.

Both Mr. Jones and Ms. Martinez believe that they were more qualified candidates than Mr. Agostini and that they were not selected on account of their race and gender and national origin,

2

respectively. Thus, they filed complaints with USPS's EEO Office, and after completing the administrative process, they filed the present suits.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is

3

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted) (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)). However, "[s]ummary judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), where a plaintiff's argument is "based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Tojzan v. N.Y. Presbyterian Hosp.*, No. 00 Civ. 6105(WHP), 2003 WL 1738993, at *4 (S.D.N.Y. March 31, 2003).

### III.

As a preliminary matter, the Court must clarify which of Plaintiffs' claims it will and will not consider. Ms. Martinez alleges in her Complaint that she was discriminated against on the basis of race, in addition to national origin and gender. She and Mr. Jones also claim that they suffered retaliation and harassment as a result of their protests against USPS's discriminatory practices. Finally, both allege that the selection of Mr. Barletta for the first posted position, not just the selection of Mr. Agostini for the second posted position, was the result of discrimination.[2]

---

[2] Although there are potentially other claims at issue, none were exhausted administratively or pursued either in Plaintiffs' motions for summary judgment or in their responses to USPS's motions for summary judgment. Thus, the Court hereby deems any such claims abandoned.

Because the limited waiver of sovereign immunity of the United States under Title VII is confined to aggrieved federal employees who have exhausted their administrative remedies, this Court has jurisdiction only over those claims that have been administratively exhausted. *See* 42 U.S.C. § 2000e-16(c); *Loeffler v. Frank*, 486 U.S. 549, 559 (1988). Both Mr. Jones and Ms. Martinez filed complaints with the EEO Office, but that Office found that only certain of Plaintiffs' claims had been raised within the appropriate limitations period, and so were eligible for consideration by the EEOC. Specifically, Mr. Jones's claims were limited to "discrimination based on race and color in that he was not selected for the position of Supervisor, Maintenance Operations, EAS Level-17, on May 20, 2005." Memorandum in Opposition [doc. # J35], Ex. Q at 4. Ms. Martinez's claims were limited to "discrimination based on national origin and sex in that she was not selected for the position of Supervisor, Maintenance Operations, EAS Level-17, on May 20, 2005." Memorandum in Opposition [doc. # M36], Ex. C1 at 4.

In Mr. Jones's Opposition, he alleges, apparently for the first time, that "the promotion of Gerald Barletta . . . in March 2005, about which plaintiff complained[,] serves as an inference of retaliation when, in May 2005, plaintiff was denied promotion." Mem. in Opp'n [doc. # J35], at 5. Although this statement is found only in Mr. Jones's brief, Plaintiffs' counsel at oral argument implied that the same was true of Ms. Martinez, and the Court will assume that both Plaintiffs intend to assert such a claim. Plaintiffs' counsel accepted the Court's offer of additional time in which to identify record evidence supporting his contention that Plaintiffs had in fact administratively raised allegations that they were denied the second posted position in retaliation for their complaints about the procedures by which Mr. Barletta was chosen for the first posted position. The only evidence Plaintiffs' counsel was able to point to was Mr. Jones's objection to the partial dismissal of his EEO

5

complaint.[3]  In that objection, however, and as Plaintiffs' counsel admits with admirable candor, the word "retaliation" never appears.  *See* Mem. in Opp'n [doc. # J35], Ex. K.

Instead, in the objection, Plaintiffs appear to argue that the doctrine of continuing violation should apply to their claims of discrimination regarding the first posted position.  As Plaintiffs note there, "[u]nder the Doctrine of 'Continuing Violation' a pattern and practice of discrimination can be relied upon to include prior acts so long as one or more of those acts are consistent with the pattern and practice of discrimination and occur[] within the relevant time period."  *Id.* at 2.  Thus, even if the doctrine of continuing violation were to apply, the result would only be to permit Plaintiffs to raise here the claim that the hiring of Mr. Barletta for the first posted position was discriminatory, not that USPS's refusal to hire Plaintiffs for the second posted position was in retaliation for their protests regarding the earlier, allegedly discriminatory hiring practice.  However, in their briefs and at oral argument, counsel for both Mr. Jones and Ms. Martinez expressly disavowed any claim of discrimination regarding the first posted position.  *See, e.g.*, Mem. in Opp'n [doc. # J35], at 4 ("This case does not involve the claim that plaintiff was denied promotion in January, 2005.  Rather, this case asserts that what happened in January, 2005 is a part of the pretext prong of plaintiff's case."); Mem. in Opp'n [doc. # M36], at 6 ("Note: with respect to the announcement dated January 31, 2005, the relevancy here goes to the issue of pretext and pretext only . . . .").  Thus, the Court will not consider any claims of discrimination regarding the first posted position, and the Court also finds that Plaintiffs have failed to exhaust administratively any claims for retaliation based on the selection process for the first posted position.  Accordingly, the Court

---

[3] The Court notes that Mr. Jones's objection was included twice among Plaintiffs' exhibits, while no objection appeared for Ms. Martinez.  Thus, the Court will assume for the purposes of this opinion that Ms. Martinez submitted a substantially identical objection as well.

grants summary judgment to USPS on any claim that it discriminated against either Plaintiff in connection with the first posted position, which was awarded to Mr. Barletta, or that USPS retaliated against either Plaintiff based on the selection process for the first posted position. To be clear, then, the only claims before the Court are those claims approved by the EEOC – namely, discrimination regarding the second posted position on the basis of race and color, in Mr. Jones's case, and national origin and gender, in Ms. Martinez's case, with regard to the second posted position.

## IV.

Mr. Jones's racial discrimination claim and Ms. Martinez's gender and national origin discrimination claims against USPS are governed by the well-established three-part *McDonnell Douglas* burden-shifting framework. "'In an employment discrimination case, a plaintiff has the burden at the outset to prove by the preponderance of the evidence a *prima facie* case of discrimination.'" *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (quoting *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002)). To satisfy their *prima facie* burdens, Mr. Jones and Ms. Martinez must demonstrate that (1) they are members of a protected class; (2) they are competent to perform the job or are performing their duties satisfactorily; (3) they suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination. *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000).

When a plaintiff satisfies her *prima facie* burden, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Mario*, 313 F.3d at 767. However, once the defendant proffers such a reason, "the presumption of discrimination created by the *prima facie* case drops out of the analysis,

7

and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario*, 313 F.3d at 767 (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). The burden then shifts back to the plaintiff to prove "'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" *Id.* (quoting *Reeves*, 530 U.S. at 143). The Court must not rely solely on the plaintiff's rebuttal of the employer's explanation but must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Id.* (quoting *Reeves*, 530 U.S. at 143). Thus, the plaintiff must show not only that the employer's stated justification was pretextual but also that the real reason for the employer's action was discrimination. *See, e.g.*, *Mutts v. S. Conn. State Univ.*, No. 3:04 CV 1746(MRK), 2006 WL 1806179 (D. Conn. June 28, 2006), *aff'd*, No. 06-3387-CV, 2007 WL 1742869 (2d Cir. June 15, 2007).

It is undisputed that both Mr. Jones and Ms. Martinez are members of a protected class, and USPS concedes, for the purposes of these motions, that both Plaintiffs meet the second and third *McDonnell Douglas* prongs as well. The Court will assume *arguendo* that Plaintiffs have succeeded in making out a *prima facie* case of discrimination. The Court also finds that USPS has satisfied its burden of producing a non-discriminatory rationale for its decision to hire Mr. Agostini, rather than Plaintiffs, for the second posted position: that Mr. Agostini was the most qualified candidate for the job. Accordingly, the Court's analysis will focus on whether Plaintiffs have provided sufficient evidence to permit a reasonable jury to conclude not only that USPS's reason was pretextual, but also that USPS's true motivation was discriminatory animus.

8

**V.**

Before turning to the Plaintiffs' individual circumstances, the Court will address an argument both Plaintiffs make in their own summary judgment motions in an effort to show pretext and discriminatory animus. As mentioned above, Mr. Jones and Ms. Martinez have abandoned any claims of discrimination regarding the first posted position. However, they claim that the "posting and re-posting process . . . was improper, irregular and indicative of discriminatory intent" in that "white persons who should not even have been deemed initially qualified for the position [i.e., Mr. Agostini] were nevertheless allowed to post the second time around." Complaint [doc. # J1], at 3-4; Complaint [doc. # M1], at 4. Specifically, Plaintiffs argue that the events surrounding the first posted position selection process demonstrate that the reasons proffered for selecting Mr. Agostini over Plaintiffs were pretextual.

Even taking the facts in the light most favorable to Plaintiffs, however, the Court is unable to conclude that Plaintiffs have pointed to sufficient evidence to permit a reasonable jury to find that the hiring process, either the first or the second time, was in any way irregular. As mentioned above in the statement of facts, Mr. Barletta was selected to fill the first posted position. At the time of the posting, Mr. Barletta had already been working as an SMO at the Stamford facility for approximately one year, and he had requested a lateral transfer to the posted SMO position. In March 2005, Mr. Robert Olsen, the USPS manager who conducted the selection process for both the first and the second posted positions, granted Mr. Barletta's request. *See* Def.'s Local Rule 56(a)1 Statement [docs. ## J28, M28], Ex. 2-A (Declaration of Robert Olsen [hereinafter "Olsen Decl."]), part 1, at 3. Mr. Barletta had been assigned as a "building side" SMO, meaning that he specialized in building systems (rather than the automated mail handling system). *Id.*

9

Mr. Barletta's previous position as SMO was itself then posted as a vacancy, the second posted position. At that time, however, managers at the Stamford facility decided to rearrange the hours of the position, creating a "split schedule" under which the SMO would work the second shift Monday through Wednesday and the third shift on Saturday and Sunday. Although the SMO would be responsible for supervising maintenance employees involved in both the automated mail handling system and the building systems, Mr. Olsen stated in the Comparative Analysis/Selection Memo he prepared contemporaneously with the candidate interviews that the split schedule was intended primarily to ensure that an SMO would be available on weekend evenings to handle any building system problems or repairs. *See* Olsen Decl. [docs. ## J28, M28], Attach. D at 1.[4]

Mr. Jones, Ms. Martinez, Mr. Agostini, and Mr. Varughese (an Indian male) all applied for the second posted position, and all were interviewed by Mr. Olsen. Shortly after completing the interviews, Mr. Olsen created the Comparative Analysis/Selection Memo, in which he described the qualifications and relative merits of each of the candidates and explained the rationale behind his selection of Mr. Agostini. Mr. Olsen noted that Mr. Agostini was currently employed as a Building Equipment Mechanic, and as such had been involved in many building-systems-related projects. Mr. Agostini had a knowledge of all building systems and equipment, as well as blueprints, schematics, and technical drawings. Working as part of USPS's "Movers and Shakers Team" had also provided Mr. Agostini with experience related to the automated mail processing equipment. Mr. Agostini had acted as a temporary supervisor on several previous occasions, had a "take charge attitude," and

---

[4] Mr. Jones stated in his deposition that "[i]f you look on all SMO job requirements on their postings for the jobs, the requirements are all the same no matter where you go for an SMO . . . ." Mem. in Opp'n [doc. # J35], Ex. D at 4. As such, he disagreed with the proposition that the second posted position should be considered to specialize in building-side supervision.

10

worked well with other employees. He had also recently attended a week-long training course for would-be temporary supervisors. Thus, Mr. Olsen wrote, "[a]fter reviewing the back ground of all the finalists and interviewing each of them, it is my conclusion that Angelo Agostini represents the strongest candidate, with his back ground in the building side and safety." Olsen Decl. [docs. ## J28, M28], Attach. D at 2.

Mr. Olsen noted that Mr. Jones also had experience with safety issues and worked well with others, and that he had also recently signed up for and attended a training course for temporary supervisors. However, Mr. Olsen found that Mr. Jones's building experience was mostly from his prior job with the military, over 15 years previously, in which Mr. Jones had assisted in the repair of housing quarters. Ms. Martinez, for her part, spoke of her previous temporary supervisory positions and the many home study and online courses she had taken in building and home repairs. Although her communication skills were good, Mr. Olsen considered her interview only "fair," noting that she had previously attended the Associated Supervisor Program (the training program to become a supervisor) more than once, but had failed each time. Also, she was "weak in the field of electric [sic] and electronics," and "has not had any experience in the field." *Id.*

The Court's examination of the record has produced absolutely no evidence, beyond Plaintiffs' own conclusory statements, that the so-called "posting and re-posting process" was in any way irregular or the result of anything other than USPS's need to fill the SMO position that had been created when Mr. Barletta transferred to the first posted position.[5] USPS thus has articulated a

---

[5] At oral argument Plaintiffs' counsel alleged that Mr. Agostini, unlike Mr. Jones and Ms. Martinez, had not received a letter at the end of the first posting process thanking him for his application. Plaintiffs have provided no evidence that Mr. Agostini did not in fact receive such a letter, but even assuming *arguendo* that he did not, the Court finds no basis in Plaintiffs' contention that this fact indicates Mr. Agostini was found to have been unqualified to apply.

legitimate explanation of the first and second posting processes. *See* Olsen Decl. [docs. ## J28, M28], at 2-3.

Thus, the Court turns to whether either Plaintiff has offered evidence from which a reasonable juror could conclude that USPS's articulated reasons were pretextual and the real reason was discriminatory. While Plaintiffs' cases are, to say the least, rather thin, the Court concludes that there are genuine issues of material fact that prevent USPS from obtaining summary judgment.

As to Mr. Jones, the Court says this for several reasons. Certainly, if a jury believes Mr. Olsen's explanation for his selection, Mr. Jones has no case. But a jury is not required to believe Mr. Olsen. *See Dillon v. Morano*, – F.3d –, 2007 WL 2323987, at *5 (2d Cir. 2007) (vacating district court's grant of summary judgment for defendant because a "jury is under no obligation to find [a defendant] credible or find [his] explanation believable"). Certainly if a jury disbelieved Mr. Olsen on his claim that he intended the SMO position to focus on building-side issues, rather than on automation-side maintenance, Mr. Jones would appear to be the more qualified candidate, a point that USPS does not even attempt to refute. *See* Mem. in Opp'n [doc. # J35], Ex. J (Jones Dep.) at 70. Even under Mr. Olsen's explanation of the responsibilities associated with the second posted position, some oversight of automation-side equipment would be necessary, and Mr. Jones argues that his background in building maintenance was adequate. *Id.* Mr. Jones also disputes Mr. Olsen's description of Mr. Barletta as specialized in building-side maintenance; rather, Mr. Jones contends that Mr. Barletta, before his transfer, had been responsible as SMO for both automation-side and building-side maintenance, and that this was customary of SMOs in general. *Id.*, Ex. D (Jones Dep.) at 55-56.

Furthermore, here, Mr. Jones has some evidence that might cause a jury to doubt Mr. Olsen's credibility. For example, neither the job posting for the SMO position nor Mr. Olsen's contemporaneous Comparative Analysis/Selection Memo mentions attendance records as a factor in the selection process. *See* Olsen Decl. [docs. ## J28, M28], Attach. C. Yet, at his deposition, Mr. Olsen stated that he considered the different attendance records of the candidates in selecting Mr. Agostini. *See* Pl.'s Local Rule 56(a)1 Statement [doc. # J31], Ex. 5, at 2-3. Moreover, the record shows that Mr. Jones and Mr. Agostini both received Letters of Warning regarding their attendance records on March 19, 2004, although there are certainly differences in the two men's attendance records that a jury could consider in evaluating Mr. Olsen's explanation. *See* Pl.'s Local Rule 56(a)1 Statement [doc. # J31], Ex. 7; Pl.'s Local Rule 56(a)1 Statement [doc. # J31], Ex. 5, at 2.

Of course, merely showing pretext is not sufficient. A plaintiff must also show that the real reason for the decision was unlawful. Here, however, the evidence of pretext, combined with the fact that the only two individuals to receive the SMO positions were white and the only ones not to get those positions were African-American and Hispanic, might persuade a jury that Mr. Jones had been the victim of discrimination. The Court does not suggest that such a conclusion is likely; only that is it permissible given the current state of the record. And that is all that is required to deny summary judgment.

Ms. Martinez's claim is even weaker than Mr. Jones's, because her qualifications were considerably weaker than those of either Mr. Jones or Mr. Agostini. *See* Def.'s Local Rule 56(a)1 Statement [doc. # M28], Ex. 1-A (Martinez Dep.) at 44-45, 57, 94-95, 115. However, since the Court will proceed to trial on Mr. Jones's claims in any event, and since the claims involve the same position and decision maker, prudence suggests that the Court allow both plaintiffs to present their

claims to the same jury. *See* Charles Alan Wright et al., 10A *Federal Practice and Procedure* § 2728 (3d ed. 1998) ("[E]ven though the summary-judgment standard appears to have been met, the court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of terminating the action prior to a full trial.").

This is particularly true since even Defendants concede that Ms. Martinez had no attendance issues, a factor that had at least some influence in Mr. Olsen's decision regarding Mr. Agostini. *See* Pl.'s Local Rule 56(a)1 Statement [doc. # M31], Ex. 6 (Olsen Dep.), at 72; *see also id.* at 75 (Q. "As Ms. Martinez's attendance was not factored in at all and as Mr. Agostini had a letter of warning concerning his attendance, is it not true that Ms. Martinez's attendance as a factor is better than that of Mr. Agostini?" A. "I guess you can say so."). Furthermore, a remark made by Mr. Olsen could be construed by a jury to reflect gender bias, and Mr. Olsen admitted in his deposition that Ms. Martinez had worked for USPS longer than any of the other applicants and that she "knew what she was talking about on the mail processing side from being over there on detail." Pl.'s Local Rule 56(a)1 Statement [doc. # M31], Ex. 9, at 60. Finally, and perhaps most importantly, Ms. Martinez asserted that supervisors are not permitted themselves to engage in the repair of any of the equipment; rather, they coordinate the maintenance actually performed by others. *See* Def.'s Local Rule 56(a)1 Statement [doc. # M28], Ex. 1-A (Martinez Dep.) at 56 ("[A]s a supervisor you're not allowed to do that type of work. That's called crossing crafts. So, as a supervisor your obligation is to know and to have your people available to do that work not to actually do the work."). Thus, a reasonable jury might well conclude that Mr. Agostini's stronger background in maintenance should not have been decisive.

## VI.

Mr. Jones and Ms. Martinez have also moved for summary judgment. Given that the Court believes there are genuine issues of material fact that prevent the Court from granting summary judgment to USPS, it follows that the summary judgment motions of Mr. Jones and Ms. Martinez must also be denied.

Therefore, the Court DENIES Mr. Jones's Motion for Summary Judgment [doc. # J29] and Ms. Martinez's Motion for Summary Judgment [doc. # M29] and GRANTS IN PART and DENIES IN PART USPS's Motions for Summary Judgment [docs. ## J27, M27]. The Court *sua sponte* consolidates these cases for purposes of trial. The Court will issue a separate order setting forth the trial schedule.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: September 25, 2007.**